**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-08-0932-01-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Julio Cesar Feliciano, Jr., | |
| Defendant. | |

Defendant Julio Feliciano, Jr. has filed a motion to suppress all evidence seized during the execution of a search warrant at his residence. Dkt. #246. The government has responded (Dkt. #266) and Feliciano has replied (Dkt. #278). Feliciano argues that the search was unlawful – and suppression is warranted – because it was conducted at nighttime without good cause and because no probable cause existed for the search and seizure of certain items listed in the warrant. Counsel agreed at the hearing on September 28, 2009 that an evidentiary hearing on this motion is not necessary. For the reasons that follow, the Court will deny the motion.

**I.     Background.**

Around 3 p.m. on August 12, 2008, law enforcement officers arrested Feliciano and others for armed robbery. Dkt. #246 at 2.[1] Investigators, including local law enforcement

---

[1] Citations to pages in the parties' filings will be to the page numbers applied by the Court's electronic docket at the top of each page.

and FBI officers, began questioning Feliciano and Marco Serrano, a co-defendant, late that night. Dkt. #266 at 2. Investigators learned that Serrano and Feliciano lived together in a trailer in Phoenix. Dkt. #246 at 2. Using this information, Detective Kathy Enriquez drafted a warrant affidavit for the search of the trailer, listing several categories of items to be seized. Detective Enriquez sought to show probable cause by stating that a series of armed robberies, linked by surveillance photographs and modus operandi, occurred in the Phoenix area between February and August of 2008. The robbers were seen in various surveillance videos wearing disguises, law enforcement shirts, ballistic vests, and carrying multiple weapons. Large amounts of money were stolen in the robberies. Officers found Feliciano's DNA at four of the robbery scenes and, on August 12, 2008, conducted surveillance as he and others committed an armed robbery of a bank. Officers pursued the suspects and eventually arrested them. One of the arrested suspects, Marco Serrano, subsequently admitted his involvement in several of the robberies. *Id*. at 2-4.

The affidavit further stated that Feliciano told detectives that he had been staying in a trailer around 4000 W. Van Buren Street and described its appearance and location. Another suspect told officers that she had been to the trailer earlier in the day to help Feliciano and others move out. Detective Enriquez concluded that the trailer was likely to contain evidence tending to show that Feliciano committed armed robberies. *Id.* Detective Enriquez further stated that good cause for a nighttime search existed because some of the items to be collected included biodegradable evidence – DNA – and failure to collect them in a timely manner would render them useless. *Id.* at 5.

Based on Detective Enriquez's affidavit, a superior court judge issued a warrant early in the morning on August 13, 2008, indicating that a search of Feliciano's trailer could be conducted between 10 p.m. and 6 a.m. Dkt. #246-1 at 3. Officers began the search that morning before 6 a.m. Dkt. #246-3 at 3-13. Officers seized 41 items from the trailer, some of which came from common areas or Feliciano's room and some of which came from Serrano's bedroom. *Id.* Feliciano asks the Court to suppress all of the items seized from the trailer.

## II. Analysis.

### A. Standing to object.

A defendant has standing to object to a search and seizure if he can demonstrate a "'legitimate expectation of privacy' in the place searched or the thing seized." *United States v. Davis*, 332 F.3d 1163, 1167 (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). Feliciano contends that he has standing because officers searched a place where he has a legitimate expectation of privacy – his home. Dkt. #246 at 4. *See Mancusi v. DeForte*, 392 U.S. 364, 369 (1968) ("It has long been settled that one has standing to object to a search . . . of his home.") (citing *Gouled v. United States*, 255 U.S. 298 (1921); *United States v. Lefkowitz*, 285 U.S. 452 (1932)).

The Court concludes, however, that Feliciano does not have standing to object to the search of Marco Serrano's bedroom. According to the Ninth Circuit, a defendant has no standing to contest the search of his roommate's bedroom unless he shares that bedroom or has permission to use it. *See Northern v. United States*, 455 F.2d 427, 430 (9th Cir. 1972). Feliciano has not asserted that he shared the bedroom with Serrano, that he had permission to enter the bedroom, or that he had an expectation of privacy in the items seized from the bedroom.

Feliciano argues in his reply that he has standing to object to the search of Serrano's bedroom because officers had to violate Feliciano's rights to get to the bedroom. Feliciano cites no authority holding that he can object to the search of Serrano's bedroom merely because law enforcement illegally walked through his living room. More importantly, as explained below, the Court finds that officers did not violate Feliciano's rights by their presence in the house. Feliciano later makes the same admission, stating that "the police were lawfully in Defendant's residence." Dkt. #246 at 8.

Because Feliciano has no standing to object to the items seized from Serrano's room (items 23 through 41), the motion to suppress will be denied with respect to those items. The remainder of this order will concern only items 1-22.

**B. Nighttime search.**

Feliciano argues that the search was conducted at night (shortly before 6 a.m.) without good cause. Dkt. #246 at 4. Under Rule 41(e)(2)(A)(ii)[2] of the Federal Rules of Criminal Procedure, a warrant must be executed during the daytime "unless the judge for good cause expressly authorizes execution at another time."[3] Noncompliance with this rule requires suppression only when "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir. 1981) (citations omitted).

Feliciano does not attempt to establish prejudice. He does not argue that the search would not have occurred or would have been less abrasive if conducted during the daytime, nor could he, given the fact that the trailer was unoccupied when searched.

Feliciano does contend that law enforcement officers intentionally and deliberately disregarded Rule 41, but the Court finds none of his arguments persuasive. Feliciano first contends that the warrant concerned an August 1, 2008 bank robbery, that officers collected no DNA evidence from that robbery, and that officers therefore had no reason to collect DNA evidence from the trailer. In response, the government asserts that DNA evidence was found in the getaway vehicle from the August 1, 2008 bank robbery. Dkt. #266 at 8. Feliciano does not dispute this fact in his reply.

Second, Feliciano asserts that waiting a few hours would not have rendered DNA evidence useless. But Feliciano provides no scientific support for this assertion. Feliciano

---

[2] Feliciano cites to Rule 41(e)(2)(B), which concerns tracking devices. The Court assumes Feliciano intended to cite to Rule 41(e)(2)(A)(ii).

[3] A state judge authorized the search warrant in this case, and local law enforcement executed it. Rule 41 generally would not apply to such state proceedings. *See United States v. Palmer*, 3 F.3d 300, 303 (9th Cir. 1993). Before the search warrant was drafted, however, law enforcement determined that Feliciano would be prosecuted in federal court. For this reason, the government does not object to the application of Rule 41. Dkt. #266 at 7 n.4. Moreover, Feliciano's state-law argument is the same as his federal law argument – that the nighttime search was not supported by "good cause." Dkt. #246 at 4.

provides no evidence from which the Court can conclude that Detective Enriquez was mistaken in her belief that DNA evidence would degrade quickly, and certainly no basis for concluding that her assertion was a mere sham as Feliciano contends.

Third, Feliciano argues that officers did not actually collect DNA evidence from the trailer. The Court does not agree. Some of the evidence, such as sunglasses, weapons, and ammunition, might well have been suitable for DNA testing. Feliciano does not address them.[4] Although it does appear that officers did not collect DNA-specific evidence such as hairbrushes or combs, Feliciano makes no attempt to show that such items were present in the trailer. And even if Feliciano had shown that such items were present and not collected, the Court could not conclude that the officers acted with intentional and deliberate disregard of Rule 41. Officers engaged in the investigation likely felt no need to collect items such as hairbrushes that would provide a DNA profile of Feliciano. They already had such a profile. Indeed, they had used it to identify Feliciano as a suspect in the first place. Moreover, officers had a mouth swab from Feliciano only hours earlier.[5] Because the officers already had Feliciano's DNA profile, they had no need to collect hairbrushes or similar DNA-specific evidence. When Detective Enriquez – who was present when the mouth swab was taken – expressed concern about the loss of biodegradable evidence in her affidavit, she likely was thinking about the loss of DNA evidence that would tie specific items found in the trailer, such as guns, to Feliciano.

Feliciano has not shown that the officers intentionally and deliberately disregarded Rule 41's good cause requirement. To the contrary, Detective Enriquez specifically

---

[4] Feliciano does argue that none of the items seized during the search were ever submitted for DNA testing. He does not, however, address the condition in which they were found or other reasons they ultimately might have been thought unsuitable for testing. Given that items potentially suitable for DNA testing were collected in the search, the Court cannot conclude that the ultimate decision not to test them shows the officers intentionally disregarded the good cause requirement of Rule 41.

[5] The Court is aware of this fact from having reviewed the videotape of the interview of Feliciano conducted earlier in the evening. The Court reviewed the tape in connection with Feliciano's motion to suppress the interview.

addressed that requirement in her affidavit, and the state judge who issued the warrant found the requirement satisfied. Suppression of evidence on this basis is not warranted.

**C.     Probable cause.**

Feliciano argues that several portions of the warrant were overbroad. In particular, he argues that the affidavit showed no probable cause for seizure of (1) photographs, including still photos, negatives, videotapes, film, undeveloped film, and slides ("photograph category"), and (2) any other items tending to show the crime of armed robbery occurred ("crime evidence category").[6] Feliciano asserts that because the affidavit was silent on how any of these items were related to illegal activity, and because the warrant was overbroad, these items must be suppressed.

When a defendant objects to a warrant on the basis that probable cause did not exist, the duty of the reviewing court "is simply to ensure that the [judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (ellipses in original). A judge's finding of probable cause is entitled to great deference and will be reversed only if clearly erroneous. *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000); *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir. 1986). Feliciano argues that probable cause did not exist because there is no nexus between the items to be seized – the photograph and crime evidence categories – and the armed robberies he allegedly committed. To satisfy the nexus requirement, a judge must have "cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967).

In this case, the judge reasonably could have believed that evidence in the photograph category would aid in conviction. Detective Enriquez stated in her affidavit that Feliciano, Marco Serrano, and their girlfriends lived together in the trailer, and that both Feliciano and Serrano were suspects in a string of robberies occurring over many months. Dkt. #246-2 at

---

[6] Feliciano objected to two other categories: all cell phones and chargers, and all electronic information from cell phones. Because officers did not seize any items from these categories, the Court will not address them.

3-4. The judge reasonably could conclude that photograph evidence from the trailer where they lived would show (a) a connection between the suspects and the trailer, including other evidence found in the trailer, (b) a relationship between the two suspects, (c) the whereabouts of the suspects during the past few months, and (d) a relationship between the suspects and items used in the robberies. The Court cannot conclude that the judge's decision was clearly erroneous.

The crime evidence category was a catch-all category allowing officers to seize items tending to show that the crime of armed robbery had occurred. This category was limited by the warrant's application to "evidence . . . tending to show that Julio Feliciano and Marco Serrano have committed the offenses." Dkt. #246-1 at 3. Such catch-all phrases are permitted if the context adequately limits their scope. *Reeves*, 210 F.3d at 1046-47. Here, the affidavit and warrant were sufficiently limited to armed robberies committed by Feliciano and Marco Serrano. Moreover, the crime evidence category – items "tending to show the crime of armed robbery occurred" – clearly would aid in conviction. The affidavit provided a substantial basis for believing that Feliciano and Serrano committed armed robberies, and it follows that any items tending to show Feliciano's guilt would aid in his conviction. The Court does not find the crime-evidence category overbroad.

**D.  Good faith exception.**

Even if the portions of the warrant challenged by Feliciano were not supported by probable cause, the Court concludes that seizure of items covered by those portions would fall within the good faith exception to the exclusionary rule. *See United States v. Leon*. 468 U.S. 897, 922-23 (1984). In *Leon*, the Supreme Court held that items seized without probable cause need not be excluded when law enforcement officers conduct a search in good faith reliance on an objectively reasonable search warrant.

Feliciano argues that nine items could not have been seized in good faith because the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923. The Court does not agree. The affidavit supporting the search warrant established that bank robberies had occurred over

the space of six months, that Feliciano had been linked to four of the robberies through DNA evidence, that Feliciano and others had been observed committing a bank robbery on the day the affidavit was signed and had been arrested while fleeing from the robbery, that Marco Serrano subsequently had admitted his involvement in some of the robberies, and that Marco Serrano lived with Feliciano in the trailer. These sworn facts provided a clearly adequate basis for believing that evidence of the robberies could be found in the trailer.

Feliciano argues that nine items could not be subject to the good faith exception: item 1 (photograph of male holding small revolver), item 5 (a computer memory device in a clear plastic case), item 6 (a shoe box containing various identification cards, a disposable camera, and one pair of sunglasses), item 7 (seven packs of 35mm photographs and negatives), item 14 (one pawn ticket in the name of Feliciano), item 15 (a wedding certificate for Feliciano and his wife), item 18 (a pair of men's sneakers), item 19 (a black soft side briefcase), and item 22 (four disposable Walgreen's brand cameras). Dkt. #246 at 3. Five of these items fall into the photograph category (items 1, 5, 6, 7, and 22). Dkt. #246 at 3. Two fall into the category of "[d]ocuments to show ownership/occupancy of the residence," one of the categories of evidence in the search warrant (items 14 and 15). Dkt. #246 at 3. And two fall into the crime evidence category, as they were similar to items present in surveillance photographs from the robberies (items 18 and 19). Dkt. #246 at 3; #266 at 15. Given that all of the seized items fall within categories identified in an objectively reasonable search warrant affidavit, they are subject to the good faith exclusion of *Leon*. The Court cannot conclude that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 469 U.S. at 923.

**IT IS ORDERED** that Defendant's motion to suppress (Dkt. #246) is **denied**. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on September 20, 2009 for a total of 39 days.

DATED this 28th day of October, 2009.

---
David G. Campbell
United States District Judge