**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-08-0932-01 PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Julio Cesar Feliciano, Jr., | |
| Defendants. | |

The government has filed a motion in limine to preclude defense expert testimony regarding eyewitness identification. Dkt. #270. Defendant Feliciano has filed a response. Dkt. #297. The Court heard oral arguments on November 3, 2009. For the reasons that follow, the Court will deny the government's motion.

**I.  Background.**

Feliciano is accused of committing five armed bank robberies. Dkt. #270 at 2.[1] The government plans to introduce several eyewitness identifications from photographic line-ups. Dkt. #297 at 2. Feliciano intends to call Kathy Pezdek, Ph.D., a Professor of Psychology and Associate Dean at Claremont Graduate University in California, to testify about "several factors that would raise doubts about the ability of the eyewitnesses to identify the Hispanic bank robber" in this case. Dkt. #270-1 at 2. Dr. Pezdek will not be asked to opine on the

---

[1] Citations to pages in the parties' filings will be to the page numbers applied by the Court's electronic docket at the top of each page, not to the numbers at the bottom of each page of a document.

credibility of any particular witness. Instead, she will be asked to explain factors that could affect the accuracy of the eyewitness identifications.

Factors Dr. Pezdek will address include (1) exposure time – "[p]eople do not accurately encode faces . . . that they are only very briefly exposed to" and, in this case, the witnesses "had only a very brief opportunity to see this bank robber" (*Id.*); (2) distraction – in these crimes, there "was a great deal of commotion" and "each witness was not focused entirely on any one suspect," making misidentification "more likely" (*Id.*); (3) weapon-focus – a victim looking at a gun would have "even less time to focus on the face of the person holding the gun," and "each of the eyewitnesses observed a gun and could describe it in detail" (*Id.*); (4) disguise – "[m]isidentifications are more likely when the individual observed has some portion of his head covered," and each robber in this case "was described as wearing a long wig with sunglasses" (*Id.* at 3); (5) cross-race identification – "[p]eople are more accurate identifying individuals of their own race" and in this case the suspect is Hispanic while most of the eyewitnesses are not (*Id.*); (6) time delay – "[t]he longer the duration from the incident to the first identification of the defendant, the less reliable the identification is," and in this case the delays were significant (*Id.*).

The government asks the Court to exclude Dr. Pezdek's testimony because Feliciano has not met his burden of showing that Dr. Pezdek's testimony is based on "scientific knowledge," the factors she will address are within the knowledge of the average juror, and allowing the testimony will waste time and confuse the jury. Dkt. #270.

**II. Legal standard.**

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In *Daubert*, the Supreme Court identified a non-exhaustive list of factors to be considered in evaluating the admissibility of expert testimony: (1) whether the technique or theory has been tested, (2) whether the technique or theory has been subjected to peer review and publication, (3) what the technique or theory's known or potential error rate is, and (4) the degree of acceptance of the technique or theory within the scientific community. 509 U.S. at 593-94. The Advisory Committee Note to Rule 702 identifies several additional factors: (5) whether the expert is proposing to testify about matters growing naturally and directly out of research the expert has conducted independent of the litigation, (6) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, (7) whether the expert adequately accounted for alternative explanations, (8) whether the expert is being as careful as she would be in her regular professional work outside of paid litigation support, and (9) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinions the expert would give. Fed. R. Civ. P. 702 advisory committee note (2000).

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (internal quotations omitted). The judge, therefore, must also weigh the probative value and possible prejudice of the testimony under Rule 403. *Id.*

**III.  Analysis.**

In the past, courts have been reluctant to admit expert testimony regarding eyewitness identifications, choosing instead to rely on counsel's cross-examination of eyewitnesses. *See United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996); *United States v. Hicks*, 103 F.3d 837, 847 (9th Cir. 1996); *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994). There has, however, "been a trend in recent years toward admitting such testimony." *Gurry v. McDaniel*, 149 Fed.Appx. 593, 594 (9th Cir. 2005). Moreover, the Ninth Circuit in *Rincon* made clear that such testimony is admissible "when the proffering party satisfies the standard

established in *Daubert* by showing that the expert opinion is based upon 'scientific knowledge' which is both reliable and helpful to the jury in any given case." 28 F.3d at 926 (citations omitted).

**A.     Dr. Pezdek's testimony constitutes "scientific knowledge."**

The government argues that Feliciano has not met his burden of showing that Dr. Pezdek's testimony is based on "scientific knowledge." Dkt. #270 at 10. The inquiry under *Daubert* and Rule 702 is flexible and focuses on the "scientific validity" and "methodology" of the expert. *Daubert*, 509 U.S. at 594-95. Judges "have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Fed. R. Evid. 702 advisory committee's note (2000) (quoting *Kumho*, 526 U.S. at 152). After reviewing materials provided by Feliciano and identified in relevant cases, the Court concludes that Dr. Pezdek's testimony is based on "scientific knowledge" within the meaning of Rule 702.

There is an increasing body of academic literature concerning the reliability of eyewitness testimony. *See, e.g.,* Richard A. Wise et al., A Tripartite Solution to Eyewitness Error, 97 J.Crim. L. & Criminology 807 (2007); Thomas Dillickrath, Expert Testimony on Eyewitness Identification: Admissibility and Alternatives, 55 U. Miami L. Rev. 1059, 1065 (2001) ("the voluminous publications on the subject of misidentification by witnesses satisfy the second [*Daubert*] criterion") (hereinafter "Expert Testimony"); Jennifer L. Devenport et al., Eyewitness Identification Evidence, 3 Psychol. Pub. Pol'y & L. 338 (1997).

The techniques and theories Dr. Pezdek proffers have been subject to peer review and publication. *See, e.g.*, Saul M. Kassin et al., On the "General Acceptance" of Eyewitness Testimony Research: A New Survey of the Experts, American Psychologist, May 2001, at 405-16 (hereinafter "On the 'General Acceptance'"); Hon. Robert P. Murrian, The Admissibility of Expert Eyewitness Testimony Under the Federal Rules, 29 Cumb. L. Rev. 379, 383-85 (1999) (citing studies on the factors that influence eyewitness identifications); *United States v. Smith*, 621 F. Supp. 2d. 1207, 1212-13 (M.D. Ala. 2009) (citing peer-

reviewed publications and articles regarding eyewitness expert testimony); Dillickrath, Expert Testimony, at 1066-67 (describing the methodologies used by researchers).

The degree of acceptance within the scientific community has also been studied and is substantial. *See* Kassin et al., On the "General Acceptance," at 413 (indicating that there is a substantial consensus among the scientific community regarding the effect of weapons-focus, exposure time, and time delay on eyewitness identifications).

Dr. Pezdek is an expert in the field. In addition to being a psychology professor and associate dean, she has significant research and editorial experience and has authored or co-authored more than 60 peer-reviewed scholarly articles. Most of her publications deal with matters of memory, and many specifically address eyewitness identification. *See* Dkt. #186-1 at 1-9. Moreover, her testimony will grow directly out of research she has conducted independent of litigation support.

**B.     Dr. Pezdek's testimony could help the jury.**

The government argues that Dr. Pezdek's testimony is unnecessary because it is within "the common knowledge [of] the average juror." Dkt. #270 at 8. The government particularly argues that factors such as exposure time, weapon-focus, and time delay are obvious to a jury and that her testimony therefore is not necessary. *Id.* at 8-9. In addition to the fact that Defendant, not the government, is in the best position to determine what is or is not necessary to his defense, the Court does not agree that the points to be made by Dr. Pezdek are entirely obvious to the average juror.

Experts in the field believe that many factors affecting eyewitness identification are "not intuitively known" and often are contrary to common sense. Kassin et al., On the "General Acceptance," at 412. Courts also have recognized that "jurors are unaware of several scientific principles affecting eyewitness identifications. In fact, because many of the factors affecting eyewitness impressions are counterintuitive, many jurors' assumptions about how memories are created are actively wrong." *United States v. Smithers*, 212 F.3d 306, 312 n.1 (6th Cir. 2000) (citations and quotation marks omitted).

In this case, cross-race identification is an issue. *See* Christian A. Meisnner & John C. Brigham, Thirty Years of Investigating the Own-Race Bias in Memory for Faces: A Meta-Analytic Review, 7 Psychol. Pub. Pol'y & L. 3, 7 (2001). The "potential inaccuracies of cross-racial identifications are not necessarily within the common knowledge of the average juror or, for that matter, the average judge." *Smith*, 621 F. Supp. 2d. at 1216 (citing *Commonwealth v. Zimmerman*, 804 N.E.2d 336, 344 (Mass. 2004)).

Although it certainly is true that some of the points to be addressed by Dr. Pezdek could be argued to and understood by the jury in the absence of expert testimony, the Court cannot conclude that her testimony will be unhelpful. The substantial and growing body of literature on eyewitness identification suggests that problems with such identification are not commonly understood. Given this literature and the importance of the identifications in this case, the Court cannot conclude that Dr. Pezdek's testimony should be excluded as unhelpful.

### C. Rule 403.

The government argues that Dr. Pezdek's proposed testimony, even if helpful, will "waste time and unduly influence, mislead, and confuse the jury." Dkt. #270 at 8. During the hearing on this motion, however, counsel for the government was unable to explain why Dr. Pezdek's testimony would be confusing or misleading. As discussed above, the Court believes that Dr. Pezdek's testimony could help the jury. The Court does not view the presentation of such testimony to be a waste of time, particularly when Defendant is facing years of incarceration if convicted. The government has not shown that the testimony should be excluded under Rule 403.

## IV. Conclusion.

Dr. Pezdek possesses scientific and specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue, she is qualified as an expert by knowledge, training, education, and research, and she therefore qualifies to testify under Rule 702. She may be used in this case to educate the jury on issues concerning eyewitness identification. As the Advisory Committee Note to Rule 702 explains, expert witnesses may be used "to educate the factfinder about general principles, without ever attempting to apply

these principles to the specific facts of the case." Fed. R. Ev. 702 advisory committee note (2000).

The government may disagree with Dr. Pezdek's testimony and view the eyewitnesses as entirely credible, but the government can make these points directly to the jury. The government will be free to emphasize factors supporting the reliability of the eyewitness identifications, such as the fact that several different eyewitnesses picked Defendant's photograph from a line-up of similarly looking men. The government can ask the eyewitnesses to explain the basis for their identifications, and can cross-examine Dr. Pezdek vigorously concerning her opinions. Such a course of trial will allow both sides to present their cases fully and will enable the jury to evaluate the eyewitness evidence thoroughly.

**IT IS ORDERED** that the government's Motion in Limine to Preclude Defense Expert Testimony Re: Eyewitness Identification (Dkt. #270) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on October 6, 2009 for a total of 31 days.

DATED this 5th day of November, 2009.

_____
David G. Campbell
United States District Judge